UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

EDDIE C. POWELL,

    Petitioner,

v.

THOMAS G. PHILLIPS,

    Respondent.

Case No. 1:07-cv-1022

Honorable Janet T. Neff

**REPORT AND RECOMMENDATION**

This is a habeas corpus proceeding brought by a former state prisoner pursuant to 28 U.S.C. § 2254. At the time of filing this action, petitioner was serving a sentence of 3-to-15 years' incarceration, imposed on December 2, 2005, after petitioner was found guilty in a bench trial of operating a motor vehicle while intoxicated (third offense), a felony. MICH. COMP. LAWS §§ 257.625(1)(a), (9)(c). The sentence was enhanced by petitioner's status as a fourth-felony offender, arising from five previous felony convictions in the states of Michigan and Indiana. MICH. COMP. LAWS § 769.12. After sentencing, petitioner filed a delayed application for leave to appeal to the Michigan Court of Appeals, which that court denied for lack of merit in the grounds presented. The state Supreme Court denied discretionary review on June 26, 2007. Petitioner instituted this *pro se* habeas corpus action by timely petition filed on October 3, 2007, raising the same three claims that had been exhausted in the state appellate courts.[1]

---

[1] At the time of filing this action, petitioner was serving the 3-to-15 year sentence imposed by the Allegan County Circuit Court. Petitioner was discharged from state custody in January 2010.

The *pro se* habeas corpus petition raises three grounds for relief. First, petitioner challenges the sufficiency of the evidence to support the trial judge's verdict that petitioner was operating a motor vehicle under the influence of alcohol. The only issue raised in support of this ground for relief is that the prosecutor failed to prove beyond a reasonable doubt that petitioner, and not another man, had been driving the motor vehicle. Second, petitioner asserts that the prosecutor abused his discretion by prosecuting petitioner despite having no evidence that petitioner had driven the automobile. Third, petitioner asserts that his appointed trial counsel was ineffective for failure to locate and call relevant exculpatory witnesses. Respondent has filed an answer arguing that each of the three grounds for habeas corpus relief is meritless. Upon review of the state-court record and the submissions of the parties, I conclude that petitioner has failed to establish grounds for habeas corpus relief.

**Proposed Findings of Fact**

The state court prosecution arose from an incident that took place on the morning of December 30, 2004, in Allegan County. Petitioner walked into a Shell gas station at about 8:00 a.m. and remained there for a long period of time. Ultimately, a gas station employee became concerned by petitioner's apparently drunken demeanor and called the police. By the time sheriff's deputies arrived, petitioner was with a vehicle about a quarter mile away from the gas station. Petitioner told the deputy that he ran out of gas and was lost. When the deputy asked for identification, petitioner gave him the driver's license of petitioner's cousin, Elvis Brown. The sheriff's deputy concluded that petitioner was intoxicated. Petitioner was taken into custody and charged with driving while under the influence of alcohol (third offense), a felony. MICH. COMP. LAWS §§ 257.625(1)(a), 9(c).

Petitioner was also charged with a misdemeanor, driving while license suspended, MICH. COMP. LAWS § 257.904(3)(b). The felony Information charged petitioner with being a fourth-habitual offender. MICH. COMP. LAWS § 769.12.[2]

Petitioner appeared for jury trial on October 17, 2005. (*See* Trial Transcript (TT), docket # 17). At the outset of the proceedings, defense counsel informed the court that petitioner wished to waive a jury trial and to be tried by the court. After engaging in a careful colloquy with petitioner, the court determined that the waiver of trial by jury was knowing and voluntary. (TT, 3-8). The bench trial began immediately. Defense counsel made it clear, during opening statement, that petitioner's position was that the prosecutor could not prove beyond a reasonable doubt that petitioner had been driving the automobile. (TT, 10).

The prosecution called two witnesses: Tammy Knight (an employee of the Shell gas station) and Deputy Dan Hoffman of the Allegan County Sheriff's Department. Ms. Knight testified that she was employed at the Shell station on M-89 on December 30, 2004. (TT, 11). She identified petitioner as the man who entered the Shell station that morning. After noticing petitioner standing in the store for a while, she approached him and asked if he needed help. She asked him "if he was waiting for somebody and he said no." He also declined Knight's offer of assistance to call somebody for him. Knight noticed that petitioner's eyes were "really bloodshot" and that he was swaying a lot. (TT, 12). She asked him if someone was coming to meet him, and petitioner said no,

---

[2] First and second offenses under the Michigan drunk-driving law are treated as misdemeanors. Third and subsequent convictions are felonies. MICH. COMP. LAWS § 257.625(9)(c). The record shows that petitioner had been convicted of felony drunk driving on at least three previous occasions (1991, 1995, and 2000). Consequently, this was at least the sixth time that petitioner was charged with driving under the influence of alcohol. The record shows other felony convictions as well.

so she went back to her office. Thereafter, Knight noticed that petitioner left. The cashier told her that petitioner had to go back to his car. After a time, petitioner returned. Knight asked him if he had called somebody, but he said that he had not, because there was nobody to call. She asked whether petitioner wanted her to call somebody for him, and he again declined. Knight then called the police, because she suspected he was drunk. At the time Knight called the police, petitioner had been there for about an hour and half. (TT, 13). Knight testified that petitioner never mentioned that anyone else was with him. (TT, 14). On cross-examination, defense counsel established that when Knight came to work, petitioner was already there and that she never saw his car. (TT, 15-16).

    Deputy Dan Hoffman testified that he was on duty on December 30, 2004, working the day shift from 5:00 a.m. to 5:00 p.m. (TT, 20). At approximately 8:23 a.m., he was dispatched to the Shell station on M-89 and the Blue Star Highway. He arrived at about 8:30 a.m. The clerk told him that the person she called about had left and gone to his vehicle. The officer drove a short way down M-89 and saw a silver-colored Chrysler with petitioner standing outside of the vehicle. Petitioner matched the physical description given by Ms. Knight. The deputy approached petitioner and asked if he was alright. "He stated that he had run out of gas and he had received some bad instructions or directions." (TT, 22). The deputy then engaged him in conversation and noticed both the smell of intoxicants coming from his person and that petitioner was slurring his speech. He also noticed that petitioner was "swaying really badly as well." (TT, 23). During this time, petitioner never indicated that someone else had been driving the car. (*Id.*).

    Deputy Hoffman asked petitioner for his driver's license. Petitioner handed him a license containing the name Elvis Brown. (TT, 27). Petitioner thereafter answered to the name Mr.

Brown. Officers did not learn his true identity until he was booked at the county jail and officers ran a fingerprint check. (TT, 28).

The deputy asked whether petitioner had been drinking, but petitioner denied it. Petitioner then said that his last drink was the day before, but the officer noticed that petitioner appeared to be disoriented and confused and was stumbling around. The deputy then had petitioner perform field sobriety tests, which indicated that petitioner was intoxicated. (TT, 23-27). The deputy placed petitioner under arrest.

Deputy Hoffman administered two breathalyzer tests at the jail, fifteen minutes apart. The first was at 9:48 a.m. and the second at 9:49 a.m. Both showed that petitioner's blood alcohol level was over the legal limit. (TT, 30-35). The test reports identified the defendant as Elvis Lee Brown, because the deputies had not discovered petitioner's true identity at the time the tests were administered. (TT, 34). Upon cross-examination, the deputy confirmed that petitioner never claimed that someone else had been driving the car and that petitioner was just along for the ride. (TT, 39).

After the prosecution rested, petitioner testified in his own defense. Petitioner was 60-years-old and had lived in Michigan for at least twenty years. (TT, 43). He testified that on the day in question he was coming from Grand Rapids to Allegan to pick up some money from the uncle of a man named "Steve." Petitioner said that Steve had gone to school with petitioner's sons in the 1980s and that he was a "friend of my kids." (TT, 45). He testified that Steve wanted him to drive down to Allegan to pick up some money from Steve's uncle, but that petitioner did not know where Steve was going so he "just rode along with him so nothing would happen to the car." (*Id.*). While Steve was driving, the car stalled and Steve got off the expressway. The men pushed the vehicle to

the side of the road. Steve said he was going to "call or try to get up to his uncle's or something with a truck" to tow the car. (*Id.*). This happened around 4:00 a.m. (TT, 46). After Steve was gone for over an hour, petitioner got cold and decided to walk to the Shell station. (TT, 45).

Petitioner testified that he never saw Steve again that day. (TT, 47). He denied that he ever drove the vehicle. (TT, 47). On cross-examination, petitioner testified that he did not know Steve's last name and did not know if his children knew his last name. (TT, 49). He testified that he had tried to get a hold of Steve for purposes of the trial, but that he was unable to locate him. (TT, 50).

Petitioner then recounted the events that led up to his trip with Steve. He testified that he met Steve at a store in Burton Heights (a Grand Rapids neighborhood) the night before. Steve hollered at him and asked him if he knew anybody who could give him a ride to Allegan. Petitioner first told him no but then said, "You drive," insisting on riding with him because petitioner wanted to make sure that Steve brought the car back. (TT, 50). The men walked back to the house and left for Allegan at about midnight. (TT, 51). Petitioner admitted that he had been drinking "earlier," admitting to having three 22-ounce bottles of beer the night before. (TT, 52).

Both counsel rested and delivered closing arguments. After taking a recess to review the evidence, Judge George Corsiglia returned to the courtroom and made oral findings of fact in support of a guilty verdict. The court found that petitioner had been driving the vehicle on the basis of circumstantial evidence. The court relied on, among other things, petitioner's use of a driver's license that was not issued to him and his misleading of officers as to his identify, which the court found showed a "consciousness of guilt." (TT, 67). The court found that petitioner was "materially and substantially impaired" while operating a motor vehicle and found him guilty of driving under

the influence. The court also found petitioner guilty of driving while license suspended, a misdemeanor. (TT, 69-70).

Petitioner and counsel appeared before the circuit court on December 2, 2005, for sentencing. (Transcript, docket # 18). The presentence investigation report recommended a sentence within the state sentencing guidelines. The prosecutor noted that petitioner had been in prison on three previous occasions for driving under the influence. After hearing allocution, the court imposed the recommended sentence of 3-to-15 years on the felony conviction and 93 days in jail, with credit for 93 days, on the misdemeanor conviction.[3]

   B.   **Appellate Proceedings**

On September 25, 2006, petitioner filed a delayed application for leave to appeal to the state Court of Appeals. (*See* Appellate Transcript, docket # 19). The *pro se* application raised the same three claims that are asserted in the habeas corpus petition. By order entered February 1, 2007, a panel of the Michigan Court of Appeals denied the application "for lack of merit in the grounds presented." Petitioner filed a *pro se* application for leave to appeal to the state Court of Appeals on March 23, 2007, repeating the same three issues. By standard order entered June 26, 2007, the state Supreme Court denied leave to appeal. (*See* Supreme Court Transcript, docket # 20). This habeas corpus action followed.

---

[3] The propriety of petitioner's misdemeanor conviction is not properly before this court. A habeas corpus court only has jurisdiction to review offenses for which a petitioner is "in custody" at the time of filing his petition. 28 U.S.C. § 2254(a). Petitioner's 93-day sentence on the misdemeanor conviction had long expired by the time this habeas corpus action was filed. In fact, the Judgment of Sentence shows that petitioner was given 93-days' credit for time served on this conviction at the day of sentencing. Consequently, petitioner was incarcerated in the state prison system only on the felony drunk-driving conviction.

## Applicable Standard

Because petitioner filed his habeas application long after the April 1996 enactment of the Antiterrorism and Effective Death Penalty Act, Pub. L. 104-132, 110 Stat. 1214 ("AEDPA"), the provisions of that law govern the scope of the court's review. *See Penry v. Johnson*, 532 U.S. 782, 791 (2001); *Wilson v. Parker*, 515 F.3d 682, 691 (6th Cir. 2008). The AEDPA has "drastically changed" the nature of habeas review. *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). AEDPA "dictates a highly deferential standard for evaluating state-court rulings which demands that state court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005) (citations omitted); *see Wilkins v. Timmerman-Cooper*, 512 F.3d 768, 774 (6th Cir. 2008). "AEDPA requires heightened respect for state court factual and legal determinations." *Lundgren v. Mitchell*, 440 F.3d 754, 762 (6th Cir. 2006). If a state court adjudicated the claim, deferential AEDPA standards must be applied. 28 U.S.C. § 2254(d); *see Waddington v. Sarausad*, 129 S. Ct. 823, 831 (2009). *De novo* review is restricted to instances where the state court did not address the merits of a claim. In that limited set of circumstances, "there are simply no results, let alone reasoning, to which [the habeas] court can defer." *McKenzie v. Smith*, 326 F.3d 721, 727 (6th Cir. 2003); *see also Wiggins v. Smith*, 539 U.S. 510, 534 (2003); *Van v. Jones*, 475 F.3d 292, 293 (6th Cir. 2007); *Maples v. Stegall*, 427 F.3d 1020, 1025 (6th Cir. 2005).

The AEDPA prevents federal habeas "retrials" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). Section 2254(d) states that an application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication "(1) resulted in a decision that

was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "Section 2254(d)(1)'s 'contrary to' and 'unreasonable application' clauses have independent meaning. A federal habeas court may issue the writ under the 'contrary to' clause if the state court applies a rule different from the governing law set forth in [Supreme Court] cases, or if it decides a case differently than the [Supreme Court] on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. at 694 (citations omitted). A federal court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from Supreme Court decisions, but unreasonably applies it to the facts of the particular case, or if the state court unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply. *Williams v. Taylor*, 529 U.S. 362, 407 (2000); *see Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. at 412; *Wilson v. Parker*, 515 F.3d at 691; *Ross v. Petro*, 515 F.3d 653, 660 (6th Cir. 2008), *cert. denied*, 129 S. Ct. 906 (2009). This court may not consider decisions of lower federal courts in determining whether the state decision is contrary to, or an unreasonable application of, clearly established federal law. *See Williams*, 529 U.S. at 381 ("If this Court has not broken sufficient legal ground to establish an asked for constitutional principle, the lower federal courts cannot themselves establish such a principle with

clarity sufficient to satisfy the AEDPA bar."); *see also Knowles v. Mirzayance*, 129 S. Ct. 1411, 1419 (2009); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001).

Regardless of the subsection of 2254(d) relied on by the petitioner, AEDPA requires heightened respect for state factual findings. 28 U.S.C. § 2254(e)(1); *see Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence 28 U.S.C. § 2254(e)(1); *Jaradat v. Williams*, 591 F.3d 863, 864-65 (6th Cir. 2010); *Mills v. Cason*, 572 F.3d 246, 250 (6th Cir. 2009).

## Discussion

### 1. Insufficiency of the Evidence

Petitioner challenges the sufficiency of the evidence to support his felony conviction for driving under the influence of alcohol. The only statutory element that petitioner contests is the requirement that a defendant "operate" a motor vehicle while under the influence. MICH. COMP. LAWS § 257.625(1). Petitioner raised this claim on direct review in his application for leave to appeal to the Michigan Court of Appeals. The Court of Appeals denied leave to appeal "for lack of merit in the grounds presented." (Order of 2/1/07, docket # 19).

The Due Process Clause of the Fourteenth Amendment requires that the prosecution prove "all elements of the offense charged, and must persuade the fact finder 'beyond a reasonable doubt' of the facts necessary to establish each of those elements." *Sullivan v. Louisiana*, 508 U.S. 275, 277-78 (1993) (citations omitted). When challenging the sufficiency of the evidence under due process principles, a habeas petitioner is entitled to relief only "if it is found that upon the record

evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 324 (1979). The court must give deference to the fact-finder's determination based on "the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id.* at 319. In evaluating the evidence presented at trial, this court must "view all evidence and resolve all reasonable inferences in favor of the government." *United States v. Hughes*, 505 F.3d 578, 592 (6th Cir. 2007).

Although the state Court of Appeals and Supreme Court rejected petitioner's appellate issues, they did so in standard, unexplained orders. In such circumstances, the state appellate decision is not entitled to deference under AEDPA, as the state courts did not directly address the merits of any federal constitutional claim. *See Hawkins v. Coyle*, 547 F.3d 540, 546 (6th Cir. 2008). *De novo* review is therefore appropriate, because "there are simply no results, let alone reasoning, to which the [habeas] court can defer." *Mackenzie v. Smith*, 326 F.3d 721, 727 (6th Cir. 2003). Review of petitioner's claims in this case is *de novo*.

In reviewing the sufficiency of the evidence to support a jury's verdict, this court must do so with explicit reference to the substantive elements of the criminal offense as defined by state law. *Jackson*, 443 U.S. at 324 n.16; *accord Parker v. Renico*, 506 F.3d 444, 448 (6th Cir. 2007). The statutory elements of the offense of conviction in the present case are that (1) petitioner operated a vehicle upon a highway or other place open to the general public or generally accessible to motor vehicles (2) while intoxicated, *i.e.*, under the influence of alcoholic liquor or with a blood alcohol content of .08 grams or more per 210 liters of breath. MICH. COMP. LAWS § 257.625(1). Petitioner

admits that he was intoxicated. (docket # 1-4, at 2). His only challenge is that the evidence did not support a finding that he operated the motor vehicle.

I note at the outset that a review of the sufficiency of the evidence must be made on the basis of the proofs adduced at trial. In support of his habeas corpus petition, petitioner has submitted a statement of facts wildly at odds with his own testimony at trial. Petitioner's present version of events has no bearing on the due-process claim now before the court. Rather, the court must review the evidence "adduced at the trial" in a light most favorable to the prosecution. *Jackson*, 443 U.S. at 324.

The trial judge found that the circumstantial evidence was sufficient to support a finding beyond a reasonable doubt that petitioner was the person driving the motor vehicle. Although there was no direct evidence that defendant drove the vehicle, the circumstances conclusively supported such an inference. When petitioner went to the Shell station, he told the clerk that he had run out of gas but never mentioned that anyone else was with him. The clerk expressly asked petitioner if he was waiting for anyone, and he said "no." Likewise, petitioner told Deputy Hoffman that he had become lost and ran out of gas, never mentioning that he had been accompanied by a person named Steve. Furthermore, petitioner gave the officer a false driver's license. The trial court was entitled to conclude that petitioner was trying to conceal his identity in order to avoid prosecution for driving without a license. If petitioner had not been driving, there was no reason to engage in the subterfuge. A reasonable person in that situation would be expected to tell the officer that he had not been driving, rather than give a false name. Finally, when the officer arrested petitioner for drunk driving, he never told the officer that he had not been driving.

Michigan law clearly allows the prosecution to establish that a defendant has been driving a motor vehicle solely by circumstantial evidence. *People v. Solmonson*, 683 N.W.2d 761 (Mich. Ct. App. 2004), is instructive. In that case, officers found defendant unconscious in the driver's seat of a station wagon with an open can of beer between his legs at 3:45 a.m. The car was parked at the side of the highway with its engine off. Defendant was alone in the car and there was no one else in the area. Sheriff's deputies awakened defendant and submitted him to a field sobriety test. They asked him where he had been going, and he gave them an answer. "Both deputies testified without objection that defendant never denied being the driver of the [automobile]." 683 N.W.2d at 764. In *Solmonson*, as in the present case, defense counsel argued that someone else had driven the defendant to the place where police had found him. The jury apparently rejected this theory and convicted defendant of felony drunk driving. On appeal, the state Court of Appeals held that the circumstantial evidence was "compelling" in support of a finding that "defendant had driven while intoxicated to the location where police found him." 683 N.W.2d at 765. In so holding, the state appellate court remarked that the prosecution need not disprove all theories consistent with defendant's innocence but is merely required to introduce evidence sufficient to convince a reasonable jury of guilt. *Id.*

As in *Solmonson*, the circumstantial evidence in the present case is compelling. Petitioner testified that "Steve" had been driving the car, but the trial court obviously rejected this testimony as incredible. That credibility decision is not subject to review on habeas corpus. *See Herrera v. Collins*, 506 U.S. 390, 401-02 (1993). The court was entitled to rely on petitioner's silence concerning the lack of another driver at and around the time of the arrest as substantive

evidence of guilt. Under Michigan law, where a person would naturally be expected to speak, his silence may be deemed an assent. 683 N.W.2d at 766.[4]

In summary, petitioner admitted to both Ms. Knight and the sheriff's deputy that the automobile was "his" car, and he obviously had traveled many miles from home to the place where he was stranded in Allegan County. The logical inference is that petitioner, who had access to and dominion over the car, was the person who drove it. Petitioner's contention that the car was actually driven by another man, presented in convoluted testimony that required the trial court to believe that it took petitioner and Steve four hours to drive from Grand Rapids to Saugatuck (approximately 35 miles), was subject to disbelief by the trier of fact. In the absence of another driver, a clearly permissible inference from the fact of petitioner's presence with the vehicle miles from home was that petitioner was the driver. Petitioner's due-process challenge to the sufficiency of the evidence must therefore fail.

2. **Prosecutorial Misconduct**

Petitioner's next claim is that the prosecutor abused his discretion by bringing a criminal prosecution on the basis of no evidence. This claim fails to state grounds for habeas corpus relief. A habeas court has authority to order release of a state prisoner only if the petitioner is in custody in violation of the federal Constitution or laws. 28 U.S.C. § 2254(a). This creates jurisdiction to review the process leading up to a conviction, not the exercise of discretion by the

---

[4] Petitioner never raised in the state courts any claim that the prosecutor used post-arrest, post-*Miranda* warning silence against him. *See Doyle v. Ohio*, 426 U.S. 610, 619 (1976). The record does not show that petitioner was ever *Mirandized* or that he had invoked his constitutional right to silence. Furthermore, petitioner's pre-arrest silence, and his affirmative misrepresentation of his identity, is the only silence relied upon by the prosecutor in this case.

prosecutor to initiate proceedings in the first place. So long as there is probable cause to believe that an accused has committed an offense, the decision to prosecute is within the prosecutor's discretion. *See Wayte v. United States*, 470 U.S. 598, 607 (1985); *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978). In the present case, a state district judge heard evidence at a preliminary examination and found probable cause to bind petitioner over for further proceedings. (Transcript, docket # 15). A circuit judge heard the evidence and found guilt beyond a reasonable doubt. On these facts, petitioner could not possibly prevail in a habeas corpus action by challenging the decision of the prosecutor to bring charges in the first place.

### 3. Ineffective Assistance of Counsel

Petitioner's third claim is that trial counsel was constitutionally ineffective for failure to locate and call three exculpatory witnesses: "Steve," the other cashier at the Shell station, and Elvis Brown. For the reasons set forth below, I conclude that petitioner's habeas corpus claim is directly contradicted by his sworn testimony at trial and is inconsistent with the position he took in the Michigan appellate courts.

In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The

defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

In the attachment to his petition, petitioner alleges that he told his trial attorney that he wished to subpoena "a woman who had been the cashier at a gas station he had visited the night of his arrest." (docket # 1-4). Petitioner claims that the woman would testify that petitioner had inquired whether a "Steve" had requested a tow truck or other assistance for a disabled car. (*Id.*). A careful review of the applications for leave to appeal filed by petitioner in the state appellate courts shows that petitioner never disclosed to those courts the existence of this alleged witness or the fact, if it was a fact, that petitioner asked his counsel to produce her at trial. The only witnesses mentioned in petitioner's appellate applications were "Steve" and Elvis Brown. This claim of ineffective assistance of counsel is therefore unexhausted in the state courts. More to the point, it appears that petitioner is now manufacturing grounds for habeas corpus relief that have only occurred to him years after his trial. Furthermore, petitioner's present claim that he spoke to another cashier at the Shell station is contradicted by petitioner's trial testimony, during which he never mentioned his conversation with the other witness.

Petitioner asserts in this court, as he did on appeal, that his counsel was ineffective for failure to call "Steve" as a witness. This claim is undermined by petitioner's sworn testimony at trial. The prosecutor asked petitioner whether he knew of Steve's whereabouts and whether he had tried to procure his attendance at trial. Petitioner testified that he did not know of Steve's whereabouts but that he had tried, through his daughter, to find Steve without success. Counsel can hardly be faulted for failing to call a witness whose whereabouts were unknown.

Finally, petitioner asserts that his counsel was ineffective for failure to call Elvis Brown. Petitioner now claims that Brown would have provided exculpatory testimony. This contention is based on a complete revision of the story that petitioner told at trial. Petitioner now claims that Elvis Brown agreed to let Steve use Brown's car and that Brown asked petitioner to accompany Steve on the trip to Allegan. "All that the counsel would have had to do is, interview the vehicle's owner and ask who borrowed the car and under what circumstances." (docket # 1-4, at 22). The only problem with this position is that it completely contradicts petitioner's sworn testimony. Petitioner testified that Steve, not Elvis Brown, accosted him in a parking lot and asked him whether he knew of anyone who could give him a ride to Allegan. During neither direct nor cross-examination did petitioner ever contend that Elvis Brown had asked petitioner to accompany Steve on the trip. On the basis of petitioner's sworn testimony at trial, it is not hard to conclude that petitioner's present version of facts is a patent fabrication and that his claim of ineffective assistance of counsel arising from the failure to call Elvis Brown as a witness approaches a fraud on the court.

Petitioner has not raised grounds for concluding on *de novo* review of the record that his counsel knew of and failed to call any exculpatory witness. Petitioner's Sixth Amendment ground for relief must therefore be rejected on its merits.

**Recommended Disposition**

For the foregoing reasons, I recommend that the petition be denied on its merits.


Dated:   March 2, 2010				/s/  Joseph G. Scoville
						United States Magistrate Judge


**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b).  Failure to file timely and specific objections may constitute a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir.), *cert. denied*, 129 S. Ct. 752 (2008); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).  General objections do not suffice.  *Spencer v. Bouchard*, 449 F.3d 721, 724-25 (6th Cir. 2006); *see Frontier*, 454 F.3d at 596-97; *McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006).